THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BONANZA PRESS, INC.,

        Plaintiff,

   v.

ARROW INTERNATIONAL, INC.,

        Defendant.

NO. 08-1624RAJ

ORDER

## I.  INTRODUCTION

This matter comes before the court on Defendant's motion for summary judgment (Dkt. # 18).  Neither party requested oral argument, and the court finds the motion appropriate for disposition on the basis of the parties' briefing and supporting evidence.  For the reasons explained below, the court GRANTS IN PART and DENIES IN PART the motion (Dkt. # 18).

## II. BACKGROUND

Plaintiff Bonanza Press, Inc. ("Bonanza") and Defendant Arrow International, Inc. ("Arrow") both manufacture pull-tab tickets used in games of chance.  A pull-tab gaming ticket has at least one perforated section that can be removed or lifted to reveal a symbol indicating whether the ticketholder is a winner.

ORDER - 1

Bonanza markets and sells a circular CHIPS pull-tab ticket that corresponds to its U.S. Trademark Registration Nos. 1,937,652 ("the CHIPS Registration") and 2,039,794 ("the '794 Registration"). The CHIPS Registration protects the word "CHIPS," and the '794 Registration protects the mark described as "a configuration of a circular shaped gaming ticket having a concentric circular pull-away portion." Moy Decl. (Dkt. # 20-2), Ex. A. Arrow markets and sells NUGGETS pull-tab tickets, which are either octagonal with a circular pull-away portion (first-generation NUGGETS ticket) or octagonal with an octagonal pull-away portion (second-generation NUGGETS ticket). *See* Moy Decl. (Dkt. # 20-2), Ex. B & C (pictures of first- and second-generation tickets). Arrow introduced the first-generation NUGGETS tickets in October 2008 and the second-generation NUGGETS tickets in June 2009, but has not sold any NUGGETS tickets in Washington State. *See* Stancik Decl. (Dkt. # 19) ¶¶ 3, 13; Moy Decl. (Dkt. # 20-2), Ex. D at 32:22-23.

Bonanza filed this suit alleging that Arrow's sale and marketing of the NUGGETS tickets constitute trademark infringement, unfair competition, and a violation of Washington's Consumer Protection Act ("WCPA").[1]

### III.   ANALYSIS

**A.   Legal Standards.**

    **1.   Summary Judgment.**

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the

---

[1] Bonanza voluntarily dismissed its trademark-dilution claim. *See* Pltf.'s Opp'n (Dkt. # 22) at 21:4-9.

ORDER - 2

moving party meets that initial burden, the opposing party must then set forth specific facts showing that there is a genuine issue of fact for trial in order to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Summary judgment is appropriate where the evidence "taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### 2. Trademark Infringement.

Infringement of a registered trademark consists of:

> us[ing] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

15 U.S.C. § 1114(1)(a). To determine whether a likelihood of confusion exists for a reasonable consumer in the marketplace, the Ninth Circuit suggests consideration of the following eight factors: (1) strength of the mark, (2) proximity of the mark, (3) similarity of the mark, (4) evidence of actual confusion, (5) marketing channels, (6) type of goods and degree of care by purchaser, (7) the defendant's intent, and (8) the likelihood of expansion of the product line. *See AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979). The *Sleekcraft* list of factors is neither exhaustive nor exclusive. *See E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1290 (9th Cir. 1992). A claimant can establish a likelihood of confusion without satisfying all of the *Sleekcraft* factors. *See Dreamwerks Prod. Group, Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998).

### 3. Unfair Competition Under Section 43(a) of the Lanham Act.

In order to prevail on an unfair competition claim under Section 43 of the Lanham Act, 15 U.S.C. § 1125(a), that is related to trade dress, the claimant must show that (1) the allegedly infringing feature is not functional, (2) the allegedly infringing feature is likely to cause confusion with the claimant's product, and (3) that the claimant's product is distinctive. *See Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 209-210 (2000).[2]

### 4. WCPA.

The WCPA prohibits unfair or deceptive practices occurring in trade or commerce that affect the public interest. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash.2d 778, 785, 789 (1986). For purposes of the WCPA, "trade" and "commerce" include "the sale of assets or services, and any commerce directly or indirectly affecting the people of the state of Washington." RCW 19.86.010(2).

## B. For Purposes of Resolving This Motion, the Trademark at Issue is the '794 Registration.

The court must first resolve the parties' dispute regarding the scope of the CHIPS Registration and the '794 Registration. Though the CHIPS Registration is cited in the Complaint, that registration only protects the use of the word "CHIPS" on printed paper products having a partially perforated pullaway section used as a promotional and charity gaming ticket. *See* Norris Decl. (Dkt. # 23), Ex. C. None of

---

[2] The parties dispute whether *Wal-Mart* is applicable to this case. Arrow's motion cites *Wal-Mart*, but Bonanza attempts to distinguish *Wal-Mart* because Bonanza registered its trade dress rights and *Wal-Mart* addresses whether *unregistered* trade dress is distinctive. *See* Pltf.'s Opp'n (Dkt. # 22) at 10. But *Wal-Mart*'s discussion of the elements of a Section 43(a) claim is not limited to unregistered trade dress. Though the *Wal-Mart* court notes that Section 43(a) does protect unregistered trade dress, the court states that the same distinctiveness inquiry applies whether the trade dress is registered or unregistered. *See Wal-Mart*, 529 U.S. at 210 ("In evaluating the distinctiveness of a mark under Section 2 (and therefore, by analogy, under Section 43(a)), courts have held that a mark can be distinctive in one of two ways. . . .").

ORDER - 4

Bonanza's claims described in the Complaint contend that Arrow infringed the "CHIPS" word mark, but instead tie the alleged infringement to the NUGGETS product design.  Thus, the relevant trademark at issue in this case is the '794 Registration, which protects "a configuration of a circular shaped gaming ticket having a concentric circular pull-away portion."  Norris Decl., Ex. B.

C. **Summary Judgment on Bonanza's Infringement Claim is Inappropriate Because the Court Cannot Conclude, as a Matter of Law, that Likely Confusion Does Not Exist.**

Bonanza's '794 Registration describes a circular ticket with a concentric circular pull-away portion.  Arrow's NUGGETS ticket is an octagonal ticket with either a circular or octagonal pull-away portion.  Arrow's motion displays both versions of the NUGGETS tickets next to Bonanza's registered mark.  *See* Def.'s Mot. (Dkt. # 18) at 9.  Bonanza contends that NUGGETS' "nearly round" shape imitates CHIPS' round outer shape, and that NUGGETS' round or "nearly round" pull-away portion imitates CHIPS' round pull-away portion.  According to Arrow, because NUGGETS are octagonal and CHIPS are round, NUGGETS do not imitate CHIPS.

The parties and the court agree that an octagon is not a circle.  But Bonanza argues that because NUGGETS' "nearly round" shape" is "so similar and such a close, 'colorable imitation' to CHIPS [] Bonanza's customers may be persuaded to purchase NUGGETS [because] end users will not perceive a meaningful difference."  Pltf.'s Opp'n (Dkt. # 22) at 8.  In order to determine whether such a likelihood of confusion exists, the court will consider the eight-factor *Sleekcraft* test.  Arrow urges this court to find that because five[3] of the eight *Sleekcraft* factors weigh against a likelihood of

---

[3] Arrow concedes that two *Sleekcraft* factors — the proximity of the goods and the marketing channels used — weigh in favor of likely confusion.  *See* Def.'s Mot. (Dkt. # 18) at 12.  Arrow acknowledges that one of the *Sleekcraft* factors — likelihood of expansion of the product lines — is inapposite because the products are of the same type.  *See id*. at 11.

ORDER - 5

confusion, the court should rule as a matter of law that Bonanza's trademark infringement claim fails.

### 1. The '794 Registration is a Weak Mark.

A trademark based on a product's configuration is not inherently distinctive. *Wal-Mart*, 529 U.S. at 216. Such a trademark is protectable only upon a showing of secondary meaning. *Id*. A product's design has acquired secondary meaning if there is a "mental association by a substantial segment of consumers and potential customers 'between the alleged mark and a single source of the product.'" *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1354 (9th Cir. 1985) (quoting 1 J. McCarthy, *Trademarks and Unfair Competition*, §§ 15:2 at 659, and 15:11(B) at 686). Secondary meaning can be established by, *inter alia*, (1) direct consumer testimony; (2) exclusivity, manner, and length of use of a mark; (3) amount and manner of advertising; (4) amount of sales and number of customers; and (5) established place in the market. *See Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.*, 198 F.3d 1143, 1151 (9th Cir. 1999).

Bonanza contends that the declaration of Bonanza President Richard Norris establishes either that a secondary meaning exists, or that there is at least a question of material fact as to this issue that would preclude summary judgment. Mr. Norris states that Bonanza has (1) continuously marketed CHIPS products since 1992, (2) has spent more than $1.5 million to advertise and promote CHIPS between 1998 and 2008, that Bonanza, (3) sold more than $1 million of CHIPS products annually, (4) not altered the shape or overall impression of CHIPS since at least 1998. Norris Decl. (Dkt. # 23) ¶¶ 7, 17. Mr. Norris also states that he believes,

> based upon my own observations and discussions with distributors, and based upon information obtained by Bonanza sales personnel, [] that the shape, size, name, colors, weight, longevity, and other characteristics of

ORDER - 6

> the CHIPS game pieces create a distinctive, consistent, and valuable commercial impression and trade dress within the industry for pulltab game tickets.

Norris. Decl. ¶ 11.

According to Bonanza, this evidence shows that CHIPS has "an established place in the market and purchasers associate the circular shape and trade dress of CHIPS products with Bonanza." Pltf.'s Opp'n at 20. Nothing that Bonanza has submitted, however, establishes that customers associate CHIPS' circular shape with Bonanza. In order to support a finding of secondary meaning, Bonanza must show that the CHIPS design elements "have been used in such a manner as to denote product source," and Bonanza has failed to do this. Thus, because the court has no basis on the record before it to conclude that CHIPS' circular shape has acquired secondary meaning, the court finds that the '794 Registration is a weak mark. Thus, this factor weighs against a finding of a likelihood of confusion.

**2.    NUGGETS and CHIPS are Similar to At Least Some Degree.**

Arrow argues that because an octagon and a circle are not the same shape, they are not similar. But two shapes may be not the same and yet similar; for example, an octagon and a circle are not the same, but are more similar to each other than a circle and a triangle, or a circle and a square, or even a circle and a hexagon. Thus, the court finds that the outer shapes of the two tickets are similar to at least some degree.

As to the shape of the inner, perforated sections, the first-generation NUGGETS ticket was similar to CHIPS in that it was round, and the second-generation NUGGETS ticket was similar to CHIPS in that it mirrored the outer shape. Thus, the inner shapes are also similar to at least some degree. Because the products are, in the court's view, at least somewhat similar, the court finds that this factor weighs in favor of a likelihood of confusion.

ORDER - 7

### 3. There is No Evidence of Actual Confusion Regarding the Origin of NUGGETS.

Bonanza has admitted that it knows of no distributor, operator, or end purchaser who has been confused or deceived to believe that NUGGETS are produced or approved by Bonanza. *See* Moy Decl. (Dkt. # 20), Ex. E (Requests for Admission Nos. 1-3). Thus, this factor weighs against a likelihood of confusion.

### 4. NUGGETS and CHIPS Purchasers Do Not Exercise Great Care in Product Selection.

Both NUGGETS and CHIPS are very inexpensive products, selling for approximately $1 each. These products are sold in bars and taverns, typically from a bowl behind the bar. *See, e.g.*, Moy Decl. (Dkt. # 20), Ex. F at 67:6-12, 75:3-13. The price and surroundings suggest to the court that pull-tab purchasers would not exercise particular care when selecting tickets. Distributors and operators, however, are likely more sophisticated. They have longstanding relationships with Bonanza and Arrow, and may be aware of the differences between the products.

Though Arrow emphasizes the sophistication of the distributors and operators, *Sleekcraft* describes the degree-of-care factor with regard to the consuming public, not intermediaries. *See Sleekcraft*, 599 F.2d at 353. Because NUGGETS and CHIPS are sold to the public under casual circumstances for a low price, the court concludes that this factor weighs in favor of a likelihood of confusion.

### 5. There is No Evidence that Arrow Developed NUGGETS With Malicious Intent.

Bonanza has submitted evidence it contends shows that Arrow designed the NUGGETS ticket to copy the CHIPS ticket design. This evidence includes documents related to Arrow's initial plan to produce a circular pull-tab ticket — plans that Arrow abandoned after realizing that Bonanza produced a circular ticket; an e-mail between

ORDER - 8

Arrow employees referring to octagonal tickets as "roundish"; and Arrow's use of a "Pain in the Gas" theme, after Bonanza had used that same theme on CHIPS tickets. *See* Adams Decl. (Dkt. # 24), Ex. E.

The court finds that this evidence does not establish that Arrow had any wrongful intent in designing NUGGETS. That Arrow modified its design after discovering Bonanza's round CHIPS tickets suggests that Arrow was at least attempting to avoid infringement. A reference to octagons as "roundish" simply reflects the reality that an octagon and a circle are similar to some degree, but does not necessarily imply bad faith on the part of Arrow employees. And lastly, Arrow had used a "Pain in the Gas" theme as early as 2003, and the only evidence in the record regarding Bonanza's use of that theme dates to 2005. *See* Norris Decl., Ex. F.

Just because Arrow was aware of Bonanza's CHIPS product does not demonstrate that Arrow developed NUGGETS in bad faith. The evidence instead shows that Arrow modified its plans to produce NUGGETS in order to avoid infringement. Because there is no evidence in the record before the court to suggest that Arrow acted in bad faith, the court finds that this factor weighs against a likelihood of confusion.

### 6. Evaluating the *Sleekcraft* Factors Does Not Lead to Only One Conclusion.

Three of the *Sleekcraft* factors analyzed above weigh against a likelihood of confusion, two of the factors analyzed above weigh in favor, and Arrow has conceded that two others weigh in favor and that one is inapposite. At the summary judgment stage, the court will not engage in a balancing of the evidence to determine the relative weight to be afforded to each factor, because that is an issue for the trier of fact. *See Dreamwerks Production Group, Inc. v. SKG* Studio, 142 F.3d 1127, 1129 (9th Cir.

ORDER - 9

1998); *see also Physicians Formula Cosmetics, Inc. v. West Cabot Cosmetics, Inc.*, 857 F.2d 80, 85 ("The bottom line a motion for summary judgment is not how many factors favor each side but whether a reasonable trier of fact might differ as to a likelihood of confusion.") Because the court cannot say, as a matter of law, that an evaluation of the *Sleekcraft* factors could not lead a reasonable trier of fact to find for Bonanza, the court denies Arrow's motion as to this claim.

D.  **Summary Judgment Against Bonanza's Unfair Competition Claim is Also Inappropriate Because the Court Cannot Conclude, as a Matter of Law, That Likely Confusion Does Not Exist.**

One of the elements of Bonanza's unfair competition claim — whether the allegedly infringing feature is likely to cause confusion with the claimant's product — calls for essentially the same inquiry as performed in the previous section analyzing the *Sleekcraft* factors. *See Brookfield Commc'n., Inc. v. West Coast Ent. Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999). Because, as the court described in the previous section, the court cannot conclude as a matter of law that likely confusion does not exist, it will not grant summary judgment against Bonanza's unfair competition claim. Under these circumstances, it is unnecessary for the court to discuss the other two elements of the claim, and the court declines to do so.

E.  **Plaintiff's WCPA Claim Fails Due to the Lack of Effect on Washington's Trade or Commerce.**

Arrow argues that Bonanza's WCPA claim must fail because Arrow has not sold NUGGETS tickets in Washington State. *See* Adams Decl. (Dkt. # 24), Ex. A at 13-14 (Robert Stancik's deposition testimony). Though Bonanza acknowledges that contends that Arrow has not sold NUGGETS in Washington, it argues that the potential market for NUGGETS in Washington is sufficient for purposes of the WCPA. The court notes that Bonanza does not cite any cases where a court has held

ORDER - 10

that *potential* sales in Washington support a WCPA claim.  The wording of the WCPA language itself suggests that an act or practice must have actually occurred in order to be considered to have an effect on trade or commerce.  *See* RCW 19.86.010(2) ("'Trade' and 'commerce' shall include the sale of assets or services, and any commerce directly or indirectly affecting the people of the state of Washington.")  Potential sales do not directly or indirectly affect Washingtonians.  Thus, because there is no evidence that Arrow's practices affect Washington's trade or commerce, its WCPA claim fails as a matter of law.

## IV.  CONCLUSION

For the reasons explained above, the court GRANTS IN PART and DENIES IN PART Defendant's motion (Dkt. # 18).  The court VACATES the current trial date, and will issue a new case scheduling order.

DATED this 26th day of May, 2010.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge

ORDER - 11